[Cite as *State v. Owens*, 2022-Ohio-160.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-07-007 |
| - vs - | : | O P I N I O N<br>1/24/2022 |
| | : | |
| TERRY CURTIS OWENS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 19 CR 012945

David A. Yost, Ohio Attorney General, and Andrea K. Boyd, Assistant Attorney General, for appellee.

CiceroAdams, LLC, and Jay A. Adams, for appellant.

**S. POWELL, J.**

{¶ 1}   Appellant, Terry Owens, appeals the decision of the Preble County Court of Common Pleas denying his Crim.R. 32.1 motion to withdraw guilty plea to first-degree felony rape.  For the reasons outlined below, we affirm the trial court's decision.

**Indictment, Plea Agreement, and Owens' Guilty Plea**

{¶ 2} On March 4, 2019, the Preble County Grand Jury returned an indictment charging Owens with single counts of rape in violation of R.C. 2907.02(A)(2) and aggravated burglary in violation of R.C. 2911.11, both first-degree felonies. Owens entered a not guilty plea and Attorney Kevin Lennen was appointed as Owens' counsel. There is no dispute that the state was represented by a special prosecutor from the Ohio Attorney General's Office due to concerns regarding the familiarity and close friendship between the victim, D.G., and members of the Preble County Sheriff's Office and Victim Witness Program.

{¶ 3} On March 3, 2020, approximately one year after Owens had been indicted, Owens, still represented by Attorney Lennen, entered into a plea agreement with the state. The plea agreement required Owens to plead guilty to rape in exchange for dismissal of the aggravated burglary charge. The plea agreement did not include any promises between Owens and the state regarding sentencing. Specifically, as the change of plea form stated regarding the parties' plea agreement:

> Count(s) 2 is hereby dismissed. Defendant understands this is a mandatory sentence. Defendant understands he/she is to be classified by law as a tier 3 offender (crimes after 1/1/08). AGREED No agreement as to sentencing, parties free to recommend sentence.

(Underlined text sic.)

{¶ 4} The change of plea form also set forth the following as it relates to the voluntary nature of Owens' guilty plea:

> **VOLUNTARY GUILTY PLEA.** Pleading guilty is what I want to do. I have relied upon my attorney for advice but the decision to enter a plea of guilty is mine and not the decision of my attorney. No threats have been made to me to induce me to enter a plea of guilty. No promises have been made to me as to the sentence to be imposed by the Court and further no other promises have been made to me except as part of the plea

agreement.

(Bold and underlined text sic.)

{¶ 5}   The change of plea form further set forth the following table notifying Owens of the maximum possible penalty he faced by pleading guilty to rape:

|  | Maximum | Mandatory |
|---|---|---|
| Prison: | None | 3 years, 4 years, 5 years, 6 years, 7 years, 8 years, 9 years, 10 years, 11 years |
| Fine: | $20500 | None |

{¶ 6}   Pursuant to the parties' plea agreement, Owens subsequently appeared before the trial court and pled guilty to rape in exchange for dismissal of the aggravated burglary charge.   The record indicates the trial court accepted Owens' guilty plea upon finding Owens' plea was knowingly, intelligently, and voluntarily entered.   Because the trial court did not make an audio recording of Owen's plea, the record does not contain a transcript of Owen's plea hearing.

**Owens' Sentence and Crim.R. 32.1 Motion to Withdraw Guilty Plea**

{¶ 7}   On May 6, 2020, the trial court, Judge Stephen R. Bruns presiding, sentenced Owens to serve a mandatory eight-year prison term.   Approximately one month later, on June 26, 2020, Owens, represented by new counsel, Attorney Jay Adams, filed a Crim.R. 32.1 motion to withdraw guilty plea.   Owens' motion included a supporting affidavit from his former counsel, Attorney Lennen.   The trial court, Judge Dennis J. Langer sitting by assignment, held a hearing on Owens' motion to withdraw guilty plea on March 5, 2021. During this hearing, the trial court heard testimony from one witness, Attorney Lennen.   The following is a summary of Attorney Lennen's testimony elicited at the hearing on Owens' Crim.R. 32.1 motion to withdraw guilty plea.

*Attorney Lennen's Testimony*

{¶ 8}   Attorney Lennen testified that he had been a licensed attorney since 1987

- 3 -

whose practice consists of work in the fields of domestic relations and criminal law. Attorney Lennen testified that he was appointed to represent Owens after Owens was indicted on charges of rape and aggravated burglary. Attorney Lennen testified that his representation of Owens included discussing with Owens a potential plea bargain with the state. Attorney Lennen testified, however, that "there wasn't really much from the State other than, you know, plead guilty and – there wasn't really, I don't remember them really offering much, if anything."

{¶ 9} Attorney Lennen testified that a special prosecutor was appointed to represent the state because the victim, D.G., "was close friends with a higher up in the Sheriff's Department, and a member of the Victim Witness Department here in this county," who were "two important witnesses in this case." Attorney Lennen testified that the familiarity between D.G. and "people in the inner-workings of the court system" caused Owens to have concerns about the fairness of the proceedings "just by the fact of, you know, he knew that people were connected with everybody."

{¶ 10} Despite Owen's concerns that "everybody was in cahoots with each other," Attorney Lennen testified that he told Owens the trial court judge presiding over his case, Judge Bruns, was "beyond reproach." Attorney Lennen also testified that Judge Bruns would not be "affected by that." Attorney Lennen then testified:

> And I – I continued to tell [Owens] that, you know, the person we have – always have to be worried about is the judge and this is not a judge – or any judge to be honest with you, that you have to worry about. There was no indication, I told him, that I've ever see, [that] would cause any concern and I impressed that upon him that you – the Judge is a good judge. Trust in the Judge.

{¶ 11} Attorney Lennen also testified that he told Owens there was no reason for him to think he would not be treated fairly because "you got Judge Bruns, don't – don't worry about that." Attorney Lennen further testified that he told Owens, who the record indicates

- 4 -

had no previous experience with the criminal justice system, to "trust the system" because "it's a great system."

{¶ 12} Attorney Lennen testified that he had discussed with Owens the facts of the case, the discovery that he had received from the state, and the potential defenses that Owens could raise if the matter was to proceed to trial. Attorney Lennen testified that following these discussions, Owens decided to accept the state's plea offer and enter a guilty plea despite the case being a "triable case." Explaining further, Attorney Lennen testified that prior to Owens accepting the state's plea offer, he advised Owens that if he took the matter to trial that "it could go either way," "[n]o case is completely winnable, no case is complet[ly] loseable." Attorney Lennen then testified:

> But I explained to [Owens] that, you know, in the system it's –
> it's not a rule, but it happens a lot, if you go to trial and you lose
> at a jury trial, expect to get closer to the max as opposed to the
> minimum. And I – I think that had a big effect on him knowing
> that, you know, I could be, you know, doing – doing mul – you
> know, eight, nine, ten, eleven years, whatever it would be.

{¶ 13} Attorney Lennen also testified:

> I also told him that – cause he wondered about, well, if I do a
> plea, I said there was no promises, the State wasn't agreeing to
> anything. And I said my experience with the – with – with the
> facts of this case, and with his lack of any record, and his
> background, I said my opinion, you would probably be at the low
> end of three, four, five, is what I would expect. I told him it's not
> a promise from me, cause I can't make that promise, it's up to
> the judge, they do a pre-sentence investigation, you do what
> you're supposed to do, but with everything, in my experience, in
> – in these types of cases and with the facts and with his
> background, I expected him to be at the low end, if he entered
> a plea and accepted responsibility and followed the rules.

{¶ 14} Attorney Lennen further testified and reiterated that he did not promise Owens anything prior to Owens agreeing to accept the state's plea offer. This includes any promises regarding the sentence the trial court would ultimately impose.

{¶ 15} Attorney Lennen testified that Owens concerns about the fairness of the

proceedings "amplified" after Owens saw the victim, D.G., "talking and laughing and – seeming to have a connection at that point" with "members of the court personnel." Attorney Lennen testified that these observations caused Owens to believe that he was "in a bad place," that he was being set up, that he made a mistake by accepting the state's plea offer, and that he wanted to withdraw his guilty plea. Attorney Lennen nevertheless testified that he continued to tell Owens to "trust the Judge." Attorney Lennen testified that this included the day of Owens' sentencing hearing, May 6, 2020. Explaining what happened that day, Attorney Lennen testified:

> I was sitting at the other end of the – this floor and [Owens] came up the stairway, I think he came up this stairway and walked around, and as soon as he came up to me and he was with his girlfriend, stated to me, I – I wanna withdraw my plea.

{¶ 16} Attorney Lennen then testified:

> I asked [Owens] why and he said they're talking, everybody's chummy, (unintelligible) you know, this is – I know what you've told me, but this is going – you know, I don't see where this is gonna be fair and he felt that he had made a major mistake and he wanted to – he wanted to go back to trial and he did not – he did not wanna go forward with the sentencing at that time because he felt he was gonna get the high end despite what I'd told him throughout.

{¶ 17} Attorney Lennen testified that after speaking with Owens he then "immediately" went back to Judge Bruns' chambers and asked Judge Bruns "do you know what sentence you're gonna give?" Attorney Lennen testified that Judge Bruns responded and said, "I'm goin' low end. I just don't know where on the low end I'm gonna go." Attorney Lennen testified that he took this to mean Judge Bruns was planning on sentencing Owens to a prison term of three, four, or five years "cause I consider that to be the low end." Attorney Lennen testified that he then left Judge Bruns' chambers and went back to talk to Owens. Describing his conversation with Owens, Attorney Lennen testified:

> I basically went up to him, I said, I – you're getting exactly what

> I told you – what I told you I thought you would get, and that's three, four, or five. I told him I did ask the Judge if he knew what he was gonna do on sentencing, he said he was goin' low end, I told him you're gettin' three, four, or five.

Attorney Lennen also testified that he told Owens, "I said I expect the low end of three, four, or five, but it's up to the Judge."

{¶ 18} Attorney Lennen testified that Owens trusted him and believed what he said because "it's what I'd told him throughout" that, in his opinion, "this Judge would do without a promise of three, four, five, he thought he was getting' railroaded, I went in, the Judge told me low end, I went out and told him, you're getting' three, four, five." Thereafter, when asked whether he believed Owens would have insisted on withdrawing his plea if Judge Bruns had "said anything other than low end," Attorney Lennen testified that he had "no doubt" that Owens "woulda told me to withdraw the plea cause that's what he sent me – that's what he told me throughout the day. Up until that point." Attorney Lennen also testified that, but for Judge Bruns telling him that he was "goin' low end" when sentencing Owens, that Owens would have instead moved to withdraw his guilty plea. Attorney Lennen further testified that he would have "made arguments" on Owens' behalf at sentencing "to try to get the sentencing towards a three, four, or five" if Judge Bruns had not told him he was planning on sentencing Owens on the "low end."

{¶ 19} Attorney Lennen testified that he did not make those arguments because it would have been "a bad legal move * * * at that point, yeah," and provided "no benefit" to Owens. Explaining why he believed this to be, Attorney Lennen testified:

> I had three, four, or five. I knew the Judge was givin' me three, four, or five cause that's what he told me. Or I'm sorry, given' Mr. Owens – cause that's what he told me. And doin' this job, if you know that – what the Judge is gonna do, the Judge is in a tight spot anyway because he's got an emotional person and he wants to, obviously, respect their rights too, for me to then get up and – and so to speak, kick dirt on them when I know I'm getting' what I – what I told him from day one I was getting, is

completely anti to what I should be doing at that point in time since I already got my three, four, five. All I'm doin' is makin' the situation worse and possibly getting' the Judge at that point, maybe, callin' us up there and say, look, I'm not doing this, you know, I had my three, four, five.

{¶ 20} Attorney Lennen testified that when Judge Bruns sentenced Owens to eight years in prison rather than to a term of three, four, or five years that he was "[f]loored." "[s]peechless," and that Owens was "shell-shocked." Attorney Lennen also testified that he could not remember anything like that happening before and that he considered it an "aberration." Attorney Lennen further testified that he and Owens did not "do a lot of talking after that because at that – as soon [as] that happened, I – in my view, I became a witness." Attorney Lennen testified that he then told Owens to "seek counsel other than me because you're gonna – I'm – I'm a witnesses and I can't – I can't help you here because I'm a witness."

{¶ 21} Attorney Lennen testified that he did not meet Owens since the conclusion of Owens' sentencing hearing. Attorney Lennen did testify, however, that he spoke with Judge Bruns on the telephone the day after Owens' sentencing hearing for a pretrial conference in another case. Attorney Lennen testified that during this call Judge Bruns "apologized to me for not doing what he told me he would do." Explaining his conversation with Judge Bruns further, Attorney Lennen testified:

> I had a pretrial the next day and – and I actually (unintelligible) brought it up cause, you know, I didn't feel I was a – representing him anymore, but I had a telephone pretrial the next day and I was waitin' for the Judge, as soon as the Judge got on the telephone, the first thing he said to me was he was sorry for not doing what he told me he would do. And I said, I appreciate that, but – and I kinda, appreciated the apology, but it didn't change, in my view, you know, I – probably didn't matter much to [Owens], but I did appreciate him at least doing that the next day because admittedly I was, as I said, I was a little bit floored by what hap – what had happened the day before, but that was [the] conversation, I don't know what case, but it was a telephone conversation where we do pretrials – then we were

- 8 -

doin' pretrials over the phone, I don't know what Prosecutor was in the room with him, but that's how he started the conversation. I thanked him at least for the apology. I thought, you know, it was – it was fair of him to say that, I'm not sure everybody would've, but he did.

{¶ 22} Continuing his explanation, Attorney Lennen then testified:

[W]hen he apologized to me for the – not doin' what he told me he – he woulda done, he made the statement to me that he was told that she – meaning the complaining witness, was not having a difficult time dealing with this. And he said, and then when she got up [at the sentencing hearing] and said that, that was different than what I was told. I still to do – to this day, not know who told him that prior to sentencing, it wasn't in the PSI, I know that, so based upon that conversation, somebody had a conversation with Judge Bruns prior to the sentencing and told him that the complaining witnesses – wasn't – wasn't okay, but was – was dealin' – was not having difficulty dealing with this, is what he said. I wasn't a party to that conversation, I don't know who it was, I never inquired afterwards what it wa – who said it, but I know for a fact it wasn't in the PSI. And I don't – like I said, it's unknown to me, but I know that's what he told me after he apologized to me that next day.

**Trial Court's Decision Denying Owens' Motion to Withdraw Guilty Plea**

{¶ 23} Following Attorney Lennen's testimony, and after accepting written closing arguments from both parties, the trial court took the matter under advisement. Thereafter, on June 11, 2021, the trial court issued a detailed 24-page decision denying Owens' Crim.R. 32.1 motion to withdraw guilty plea.

*No Relief Under the Post-Sentence "Manifest Injustice" Standard*

{¶ 24} In denying Owens' Crim.R. 32.1 motion to withdraw guilty plea, the trial court initially noted that the "post-sentence standard" of review should apply to Owens' motion because (1) this court, the Twelfth District Court of Appeals, "has held that when a defendant's request to withdraw his plea comes after pronouncement of sentence, the appropriate standard is [to] permit plea withdrawal only to correct a manifest injustice;" (2) Owens did not cite to any case law, nor was the trial court able to find any case law, "that

- 9 -

supports the proposition that the liberal pre-sentence standard applies to a post-sentence plea withdrawal request in a fact pattern similar to the case at bar;" and (3) even if, hypothetically, the trial court had informed Owens that it intended to sentence him to an eight-year prison term prior to the imposition of its sentence, "the post-sentence manifest injustice standard still would have applied." The trial court reached this decision based on the holding set forth by the Second District Court of Appeals that:

> When a defendant discovers before sentencing the particular sentence a trial court intends to impose, * * * a pre-sentence motion to vacate his plea ordinarily should be treated as a post-sentence motion. This is so because a defendant cannot test the sentencing waters and then move to vacate his plea just before sentencing if he receives an unpleasant surprise.

*State v. Simpson*, 2d Dist. Montgomery No. 24266, 2011-Ohio-6181, 2011 Ohio App. LEXIS 5064, *4 (Dec. 2, 2011).

{¶ 25} The trial court then noted its finding that Owens' case was not an "extraordinary one" such that Owens should be permitted to withdraw his guilty plea. The trial court reached this decision based on the following findings of fact:

> ● Owens knowingly, intelligently, and voluntarily entered his plea of guilty to the charge of Rape.
>
> ● Other than the agreement or promise by the [state] to dismiss the Aggravated Burglary count, no other promises were made by anyone.
>
> ● Specifically, with regard to sentencing or a "low end" prison sentence, no promises were made to Owens by [Attorney Lennen], the [state], or the Judge.
>
> ● When [Owens] entered his guilty plea, while he subjectively believed it likely he would receive a prison sentence of three, four or five years, Owens understood he possibly could receive a longer prison [sentence] and as high as eleven years.
>
> ● Prior to sentencing, Owens had a change of heart regarding maintaining his guilty plea.
>
> ● Owens' motivation in moving to withdraw his guilty plea was

- 10 -

that he had received an unexpected prison sentence.

{¶ 26} The trial court therefore concluded that it was not persuaded that a manifest injustice—"a clear or openly unjust act"—existed that would justify setting aside Owens' conviction and permit Owens to withdraw his guilty plea.

*No Relief Under the "More Liberal" Pre-Sentence Standard*

{¶ 27} The trial court also found that even if the "more liberal pre-sentence" standard applied to Owen's motion that Owens had still failed to establish a "reasonable and legitimate" basis for granting his Crim.R. 32.1 motion to withdraw guilty plea. In so holding, the trial court noted that of the nine factors a trial court should consider when determining whether to grant a presentence motion to withdraw guilty plea, only two of those factors weighed in Owens' favor, i.e., whether the state would have been prejudiced by the withdrawal and whether the motion was made within a reasonable time. As for the other seven factors, the trial court set forth its findings as follows.

<u>Whether the Defendant was Represented by Highly Competent Counsel</u>

> Keven Lennen is an experienced attorney, who specializes in criminal law. He has been in practice since 1987 and has been licensed in the State of Ohio, as well as the Federal Ohio District Courts.
>
> Lennen's representation of Owens – as Lennen detailed in his testimony – was excellent. On behalf of Owens, he engaged in conversations with the Special Prosecutor in an effort to reach a plea agreement. Lennen obtained full discovery. Prior to trial, he thoroughly reviewed with Owens the facts of the case, the discovery, and the potential defenses which could have been raised at trial.
>
> The *Plea of Guilty and Waiver of Trial by Jury*, filed March 3, 2020, that Owens signed includes the language immediately above his signature: "I am well satisfied with my attorney's advice and counsel and believe he/she represented me competently and to the best of his/her ability."

<u>Whether the Defendant was Afforded a Complete Crim.R. 11 Hearing<br>Before Entering the Plea</u>

The transcript of the plea hearing was not preserved in this case. However, Owens does not contend he was not given a full and thorough Crim.R. 11 plea hearing.

The *Plea of Guilty and Waiver of Trial by Jury*, filed March 3, 2020, and signed by Owens contains the following acknowledgments by Owens:

> ● He was making his guilty plea voluntarily, with understanding of the nature of the Rape charge and of the maximum penalty involved, and that it carried mandatory prison term.

> ● He understood the effect of the plea of guilty, and that the Court, upon acceptance of the plea, would impose a sentence.

> ● He understood that by entering his guilty plea he was waiving the rights to jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the State to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself.

<u>Whether the Trial Court Conducted a Full and Impartial Hearing on the Motion to<br>Withdraw the Plea</u>

Owens was given a full evidentiary hearing on March 5, 2021 on his *Motion to Withdraw Plea*. His attorney was given the opportunity – and did – submit post-hearing briefs thoroughly delineating his reasons and arguments in support of Owens' *Motion*.

<u>Whether the Trial Court Gave Full and Fair Consideration to the Motion</u>

The record in this case demonstrates that this Court case [sic] gave full and fair consideration to Owens' *Motion to Withdraw Plea*.

<u>Whether the Motion Set Out Specific Reasons for the Withdrawal</u>

The Court has made [the] factual finding that prior to sentencing Owens had a change of heart regarding maintaining his guilty plea, and that his motivation in moving to withdraw his guilty plea was that he had received an unexpected prison sentence.

- 12 -

Whether the Defendant Understood the Nature of the Charges and the Possible Penalties

The *Plea of Guilty and Waiver of Trial by Jury* signed by Owens contains an acknowledgment by him that he understood the nature of the Rape charge; that it carried a possible mandatory prison terms of "3 years, 4 years, 5 years, 6 years, 7 years, 8 years, 9 years, 10 years, 11 years;" and that "No agreement as to sentencing, parties free to recommend sentence."

This Court has made the specific factual finding that no promise of a "low end" prison sentence was made to Owens by his Attorney, the Special Prosecutor, or the Judge. This court has also found that when he entered his guilty plea, while Owens subjectively believed it likely that he would receive a prison sentence of three, four or five years, he understood he possibly could receive a longer prison [sentence], as high as eleven years.

Whether the Defendant was Possibly Not Guilty of the Charges or Had a Complete Defense to the Charges

Attorney Lennen testified he told Owens that that [sic] no case is "completely winnable or loseable."

Lennen also testified that had Judge Bruns not stated he was going to impose a "low end" sentence, Lennen would have made a statement countering the victim's impact statement, because, Lennen testified "at that point, to me the facts would be worse case scenario, is more of a sexual battery than a rape, even though we pled to the rape."

On cross-examination and re-cross-examination, Lennen confirmed the following facts in the case:

● No witnesses recanted.

● Owens' DNA was found during the Sexual Assault Nurse Examination kit performed on the complaining witness.

● The Sexual Assault Nurse Examination revealed the complaining witness had vaginal tearing and bruising on her thighs.

● There were subsequent controlled phone calls between Owens and the complainant in which Owens, who had been drunk during the sexual encounter, said he had no memory of the event

and apologized if he had done anything wrong.

● At no point during the controlled phone calls did Owens call the complainant a liar.

● During an interview with a BCI agent, Owens said he didn't remember what happened because he was very intoxicated that night.

Under re-direct examination, Lennen testified:

Q. Okay. You were asked about the idea of potential defenses and the two of you went back and forth on – on some of the facts, I won't wade as deeply into that, the reality is, in this situation there was a lot of drinking and a lot of back and forth clothes and people in beds and things of that variety, correct?

Correct.

Q. All right. And simply because Mr. Owens didn't have any memory of what occurred, does that mean that a jury may or may not believe that he raped someone, correct?

No, it's a – it's a – it's a weakness to the case, but also, you know, it's – if you're too drunk to remember things, you're too drunk to remember things and that's probably pretty much across the board. So I think everybody under cross examination during trial would've had the s – a lot of the same difficulties with the facts that night since everybody was drunk – drinking heavily, from what I – from what I was able to investigate.

Q. You were asked a question about somebody's clothes being in somebody's room and – and I think that the State asked you, or maybe you said, hey, can you tell him to get out of here. At that point in time do you remember anything in the discovery where the complainant said to her boyfriend, or to anyone, at that moment, tell that guy to get outta here, he raped me?

No, that – it – it's uncontroverted that the word rape didn't come out till later that day and really the first time it was [sic] ever came out is when she had discussions with the la – with the person from

Victim Witness.

Q. So real –

That's when it became a rape.

Q. So, reality is, there are some facts that are in dispute?

Many.

> Based upon the above testimony of Attorney Lennen, this Court is unable to make a factual finding that Owens was perhaps not guilty of Rape, or that had the case gone to trial [he] would have had a convincing complete defense to the charge.

**Owens' Appeal**

{¶ 28} Owens now appeals, raising one assignment of error challenging the trial court's decision denying his Crim.R. 32.1 motion to withdraw guilty plea.

*Crim.R. 32.1 Motion to Withdraw Guilty Plea Standard*

{¶ 29} Pursuant to Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." This rule creates two distinct types of motions for the withdrawal of a guilty plea: a presentence motion to withdraw guilty plea and a post-sentence motion to withdraw guilty plea. "There is a significant difference in the appropriate standard of review for presentence and postsentence motions." *State v. Leonhart*, 4th Dist. Washington No. 13CA38, 2014-Ohio-5601, ¶ 25.

{¶ 30} Generally, a presentence motion to withdraw a guilty plea "should be freely and liberally granted." *State v. Gabbard*, 12th Dist. Clermont No. CA2006-03-025, 2007-Ohio-461, ¶ 7, citing *State v. Xie*, 62 Ohio St.3d 521, 527 (1992). However, a defendant does not possess an absolute right to withdraw a guilty plea prior to sentencing. *State v. Manis*, 12th Dist. Butler No. CA2011-03-059, 2012-Ohio-3753, ¶ 24. "Rather, the trial court

- 15 -

must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *State v. Newton*, 12th Dist. Preble No. CA2014-10-011, 2015-Ohio-2319, ¶ 10, citing *State v. Witherspoon*, 12th Dist. Butler No. CA2010-01-025, 2010-Ohio-4569, ¶ 8. "In determining whether to grant a presentence motion to withdraw a guilty plea, the trial court should consider the circumstances surrounding the defendant's plea." *State v. Harris*, 12th Dist. Butler No. CA2018-04-076, 2019-Ohio-1700, ¶ 11, citing *State v. Metcalf*, 12th Dist. Butler No. CA2002-12-299, 2003-Ohio-6782, ¶ 11. As noted above, the nine factors that should be considered when evaluating those circumstances include, but are not limited to, the following:

> (1) whether the defendant was represented by highly competent counsel;
>
> (2) whether the defendant was afforded a complete Crim.R. 11 hearing before entering the plea;
>
> (3) whether the trial court conducted a full and impartial hearing on the motion to withdraw the plea;
>
> (4) whether the trial court gave full and fair consideration to the motion;
>
> (5) whether the motion was made within a reasonable time;
>
> (6) whether the motion set out specific reasons for the withdrawal;
>
> (7) whether the defendant understood the nature of the charges and the possible penalties;
>
> (8) whether the defendant was possibly not guilty of the charges or had a complete defense to the charges; and
>
> (9) whether the state would have been prejudiced by the withdrawal.

*State v. Snider*, 12th Dist. Clermont No. CA2012-10-075, 2013-Ohio-4641, ¶ 9. "No one factor is conclusive in the determination of whether a plea should be allowed to be withdrawn." *State v. Rivera*, 12th Dist. Butler No. CA2013-05-072, 2014-Ohio-3378, ¶ 17,

citing *State v. Fish*, 104 Ohio App.3d 236, 240 (1st Dist.1995).

{¶ 31} Unlike a presentence motion to withdraw guilty plea, "Crim.R. 32.1 allows post-sentence withdrawal of a guilty plea in limited circumstances 'to correct a manifest injustice.'" *State v. Tapia-Cortes*, 12th Dist. Butler No. CA2016-02-031, 2016-Ohio-8101, ¶ 11. A defendant who seeks to withdraw a guilty plea post-sentence has the burden of establishing the existence of a manifest injustice. *State v. Williams*, 12th Dist. Clermont No. CA2012-08-060, 2013-Ohio-1387, ¶ 11, citing *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph one of the syllabus. "To prove a manifest injustice, the defendant must show a 'fundamental flaw in the proceedings that results in a miscarriage of justice or is inconsistent with the demands of due process.'" *State v. Tringelof*, 12th Dist. Clermont Nos. CA2017-03-015 and CA2017-03-016, 2017-Ohio-7657, ¶ 10, quoting *State v. Hobbs*, 12th Dist. Warren No. CA2012-11-117, 2013-Ohio-3089, ¶ 9. "The requirement of demonstrating a manifest injustice is designed to discourage a defendant from pleading guilty to test the weight of the potential reprisal, and later attempting to withdraw the plea if the sentence was unexpectedly severe." *Williams* at ¶ 13. This sets forth an "an extremely high standard that is allowable only in extraordinary cases." *State v. Miller*, 12th Dist. Clermont No. CA2016-08-057, 2017-Ohio-2801, ¶ 15.

{¶ 32} "A trial court's decision regarding a post-sentence motion to withdraw a guilty plea is reviewed on appeal under an abuse of discretion standard." *State v. Rose*, 12th Dist. Butler No. CA2010-03-059, 2010-Ohio-5669, ¶ 15. So too is a trial court's decision regarding a presentence motion to withdraw a guilty plea. *State v. Harris*, 12th Dist. Butler No. CA2018-04-076, 2019-Ohio-1700, ¶ 10 ("[t]he decision to grant or deny a presentence motion to withdraw a guilty plea rests within the trial court's discretion"). An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *State v. Robinson*, 12th Dist.

Butler No. CA2013-05-085, 2013-Ohio-5672, ¶ 14. "[A]n 'arbitrary' decision is one made 'without consideration of or regard for facts [or] circumstances.'" *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, ¶ 12, quoting Black's Law Dictionary 125 (10th Ed.2014). "A decision is unreasonable where a sound reasoning process does not support it." *State v. Miller*, 12th Dist. Butler No. CA2016-01-007, 2016-Ohio-7360, ¶ 7, citing *AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161 (1990). "'An unconscionable decision may be defined as one that affronts the sense of justice, decency, or reasonableness.'" *State v. Wane*, 12th Dist. Butler Nos. CA2020-01-010, CA2020-01-011, CA2020-01-014, and CA2020-01-015, 2020-Ohio-4874, ¶ 22, quoting *Campbell v. 1 Spring, LLC*, 10th Dist. Franklin No. 19AP-368, 2020-Ohio-3190, ¶ 9.

*No Error in the Trial Court's Decision Denying Owens' Motion*

{¶ 33} Owens argues the trial court erred by reviewing his Crim.R. 32.1 motion to withdraw guilty plea under the standard applied to a post-sentence motion rather than the more lenient standard applied to a presentence motion. To support this claim, Owens argues that "fundamental fairness," due process, and "the basic tenants [sic] of being able to rely upon the advice of counsel" require the application of the presentence standard given the facts indicating he would have moved to withdraw his guilty plea prior to sentencing had the trial court not advised his trial counsel, Attorney Lennen, that it planned on imposing a "low end" prison term. However, regardless of whether the post-sentence or presentence standard applies, we find no error in the trial court's decision denying Owens' Crim.R. 32.1 motion to withdraw guilty plea. Therefore, as discussed more fully below, because we find no error in the trial court's decision under either the post-sentence or presentence standard of review, Owens' single assignment of error challenging the trial court's decision denying his Crim.R. 32.1 motion to withdraw guilty plea lacks merit.

*Analysis*

{¶ 34} Due to the varying degrees of proof required, if Owens is not entitled to relief under the more liberal standard applied to a presentence motion to withdraw guilty plea, the same would hold true for the more stringent standard applied to a post-sentence motion to withdraw guilty plea. Applying the presentence standard, the trial court found only two of the nine factors a trial court should consider when determining whether to grant a presentence motion to withdraw a guilty plea weighed in Owens' favor, whereas the other seven factors did not. Given the thorough explanation of its findings within its lengthy, detailed 24-page decision, we find no error with the trial court's decision as it relates to the weight the trial court decided to give to those nine factors. This court, in fact, "must defer to the trial court's judgment in evaluating the 'good faith, credibility and weight' of the offender's motivation and assertions in entering and attempting to withdraw his plea." *State v. Bradley*, 8th Dist. Cuyahoga No. 108294, 2020-Ohio-30, ¶ 5, citing *State v. Xie*, 62 Ohio St.3d 521, 527 (1992); and *State v. Smith*, 49 Ohio St.2d 261 (1977). Given the trial court's findings are supported by the record, that is exactly what this court is doing here.

{¶ 35} We also find no error with the trial court's decision finding Owens had a change of heart as to whether he should maintain his guilty plea, and that Owens' primary motivation in moving to withdraw his guilty plea was the trial court's imposition of an eight-year prison sentence. This is significant because, and as this court has repeatedly recognized, "a mere 'change of heart' is insufficient justification to allow withdrawal of a plea." *State v. Harris*, 12th Dist. Butler No. CA2018-04-076, 2019-Ohio-1700, ¶ 15, citing *State v. Newton*, 12th Dist. Preble No. CA2014-10-011, 2015-Ohio-2319, ¶ 14; *State v. Wofford*, 12th Dist. Butler No. CA2014-10-210, 2015-Ohio-3708, ¶ 11; and *State v. Metcalf*, 12th Dist. Butler No. CA2002-12-299, 2003-Ohio-6782, ¶ 19. Therefore, while we understand the facts of this case are somewhat unique given the testimony offered by

Attorney Lennen, the record clearly indicates that Owens was not promised anything as it relates to sentencing prior to entering his guilty plea, nor was Owens unaware of the maximum possible sentence he faced before he entered his guilty plea. *See State v. Hamblin*, 12th Dist. Butler No. CA2000-07-154, 2001 Ohio App. LEXIS 1412, *6 (Mar. 26, 2001) ("[a] defendant who has a change of heart regarding his guilty plea should not be allowed to withdraw that plea just because he realizes that an unexpected sentence may be imposed"). Accordingly, under either the post-sentence or presentence standard, we find no error in the trial court's decision denying Owens' Crim.R. 32.1 motion to withdraw guilty plea.

**Conclusion**

{¶ 36} For the reasons outlined above, and finding no merit to any of the arguments advanced by Owens herein, Owens' single assignment of error challenging the trial court's decision denying his Crim.R. 32.1 motion to withdraw guilty plea lacks merit and is overruled.

{¶ 37} Judgment affirmed.

M. POWELL, J., concurs.

PIPER, P.J., concurs in judgment only.


**PIPER, P.J., concurring in judgment only.**

{¶ 38} I concur with the judgment of the majority in its ruling on the merits of Owens' appeal. However, I write separately because it appears that the doctrine of res judicata bars Owens' appeal altogether, and the appeal should consequently be dismissed. As the majority opinion recognizes, Owens' motion to withdraw his plea, filed over seven weeks after he was sentenced, is meritless. It is transparently obvious that Owens merely experienced a change of heart after pleading guilty because his punishment at sentencing

was greater than what his attorney thought it should be. *State v. Guy*, 12th Dist. Preble No. CA2020-03-004, 2020-Ohio-6908, ¶ 11 ("A mere 'change of heart' is insufficient justification to withdraw a guilty plea."). However, it seems that because Owens failed to raise the issue at sentencing, he is barred from raising it in this appeal.

{¶ 39} The doctrine of res judicata provides that a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any claimed lack of due process that could have been raised by the defendant before the trial court. *State v. Harding*, 12th Dist. Madison No. CA2019-05-012, 2020-Ohio-1067, ¶ 7. Owens was represented by counsel at sentencing, but did not attempt to withdraw his plea or object to the court's sentence at that time. As such, the present *indirect* appeal is merely an impermissible "re-packaging" of evidence or issues that could have been raised at the trial court level. *State v. Statzer*, 12th Dist. Butler No. CA2017-02-022, 2018-Ohio-363, ¶ 15.

{¶ 40} Owens asserts that he could not appeal his sentence directly because no record was made of his counsel's ex parte communications with the court. Therefore, he concludes that these statements remained evidence outside the record, which would have been unavailable on direct appeal. It is true that "[t]he presentation of competent, relevant, and material evidence outside the record may defeat the application of res judicata." *State v. Myers*, 12th Dist. Warren No. CA2019-07-074, 2021-Ohio-631, ¶ 17. However, Owens and his counsel knew of Owens' expectation as to his sentence and were aware of why Owens had such an expectation. Yet they chose to withhold the issue from the trial court, which prevented the issue from being placed within record. As Owens chose not to raise the issue of sentencing before the trial court, he should not now be permitted to capitalize on his own intentional omission of evidence from the record through a collateral appeal based on the assertion that the pertinent evidence was "outside the record." *See State v.*

*White*, 7th Dist. Mahoning No. 03 MA 168, 2004-Ohio-2809, ¶ 20 ("If a defendant believes that the trial court has committed an error, then he should raise that error at the first possible opportunity, not in a collateral attack.").[1]

{¶ 41} Immediately after the sentence was pronounced, Owens' counsel should have represented that Owens' sentence was not what he was "promised" pursuant to the brief ex parte communication counsel initiated prior to the sentencing hearing. *See* Prof.Cond.R. 3.7. Owens' counsel could have, and should have, articulated on the record the particulars of the "promise," or the legitimacy of Owens' expectations. Raising the issue then and there would have given the trial court the opportunity to immediately address the issue. Additionally, once raised before the trial court, any resulting decision or ruling, if adverse to Owens, would have been preserved for direct appeal. *State ex rel. Holwadel v. Hamilton Cty. Bd. Of Elections*, 144 Ohio St.3d 579, 2015-Ohio-5306, ¶ 50. Instead, Owens' counsel decided not to raise the issue on the record.

{¶ 42} Owens' counsel admitted in his later testimony that *he believed*, based on the court's representations elicited in the ex parte communication, that Owens would get a three, four, or five year sentence, and that Owens would have attempted to withdraw his plea had he suspected he would receive a higher sentence.[2] Owens' counsel, knowing this information at the time of the sentencing hearing, remained silent, arguably a breach of his duty to promptly represent his client. *See* Prof.Cond.R. 1.3. Interestingly, Owens' counsel suggests that he became a witness once the sentence was pronounced, yet the day after

---

1. The doctrine of res judicata dictates that "a criminal defendant cannot raise any issue in a postsentence motion to withdraw a guilty plea that was or could have been raised at trial or on direct appeal." *State v. Brown*, 10th Dist. Franklin No. 05AP-929, 2006-Ohio-3266, ¶ 7. Trial counsel's failure to raise the issue at sentencing renders this appeal inappropriate.

2. Owens' motion does not challenge the propriety of the plea itself but rather is solely premised upon the circumstances surrounding the pronouncement of his sentence. A failure to give a "promised" sentence at the sentencing hearing would void the sentence, not the previous plea hearing. Owens does not argue that his plea was not knowing, intelligent, or voluntary when given. Significantly, Owens has no complaints regarding the entering of his guilty plea and assigns no error to that proceeding.

sentencing, counsel proceeded to draw the trial court into a second ex parte communication regarding Owens' sentence.

{¶ 43} To be sure, questioning the court about an alleged promise assuring a particular sentence, elicited by means of an improper ex parte communication initiated by an attorney, puts that attorney in an awkward position. *See* Prof.Cond.R. 3.5(a)(3)(i). However, if counsel believed, as he later attested in his affidavit, that a promise had been made and that his client had acted in reliance on that promise, counsel had a duty to advocate for his client. *See* Prof.Cond.R. 1.1.

{¶ 44} An appropriate example of attorney conduct in a similar situation is *State v. Grigsby*, 2d Dist. Greene No. 02CA16, 2003-Ohio-2823. In *Grigsby*, appellant alleged that the court made off-the-record promises to induce his guilty plea, which were conveyed by the court to counsel who, in turn, conveyed those representations to appellant. When the court deviated from the alleged promises at sentencing, Grigsby's counsel the following day filed both a motion to withdraw appellant's guilty pleas and an affidavit verifying the truth of the facts submitted in support of his motion. Statements made by counsel during the plea colloquy to the effect that no promises were made to appellant to induce his guilty plea were directly contradicted by counsel's subsequent sworn statements (a professional conduct violation akin to Owens' attorney's ex parte communication). However, on *direct appeal*, the court of appeals characterized counsel's "immediate and forthright actions on his client's behalf to correct a perceived injustice" as overcoming the impropriety of his earlier improper conduct. Here, however, Owens' counsel did nothing to assist his client in perfecting the record for a direct appeal.[3]

---

3. We note that *Grigsby* is dissimilar to the case *sub judice* in that the expectation resulting from an ex parte communication was the expected sentence inducing Grigsby to enter *a plea*; here, Owens alleges no inducement was given to secure his plea of guilty. "When a trial court promises a certain sentence, the promise becomes an inducement to enter a plea, and unless that sentence is given, the plea is not voluntary.

{¶ 45} Assuming the argument of appellate counsel on this collateral appeal, if Owens had a definite expectation, or promise, as to the punishment he would receive, his trial counsel strategically decided not to make a record. Counsel could have asked to approach the bench and remind the trial court of any specific representations which counsel relayed to Owens. Counsel could have proffered the specific expectation into the record or objected to the sentence as not following the court's specific representation. Counsel could have, and should have, placed in the record Owens' reliance upon the ex parte conversation and simultaneously made a motion to withdraw Owens' plea. Instead, counsel's decision at Owens' sentencing hearing was to leave his client, and the record, unprotected.[4]

{¶ 46} It is clear that Owens' desire to unwind these proceedings and withdraw his guilty plea stems solely from his punishment being greater than his counsel thought it would be. Despite being aware of the court's ex parte representation to his counsel, and because Owens never attempted to challenge his sentence before the trial court, res judicata apparently bars a challenge in subsequent proceedings to the number of years he received. *State v. West*, Butler No. CA2018-09-183, 2019-Ohio-4826, ¶ 21.

{¶ 47} The timing of Owens' complaint about the sentence he received appears to be nothing more than a tactical decision. Choosing not to make a record when he could have done so and now asserting that the pivotal information is outside the record, appears to be an attempt to game the system. The doctrine of res judicata, which applies to "every question that might properly have been litigated," exists precisely "to prevent repeated attacks on a final judgment." *Mootispaw v. Doe*, 12th Dist. Fayette No. CA95-03-009, 1995

---

Accordingly, a trial court commits reversible error when it participates in plea negotiations but fails to impose the promised sentence." (Citation omitted.) *State v. Bonnell*, 12th Dist. Clermont No. CA2001-12-094, 2002-Ohio-5882, ¶ 18. Because Owens pled guilty without any promise, the trial court did not commit reversible error which would require it to permit him to withdraw his plea. *See id.* at ¶ 23.

4. Oddly, appellate counsel makes no suggestion that trial counsel was ineffective.

- 24 -

WL 617476, *1 (Oct. 23, 1995).

{¶ 48} However, in this appeal, the parties did not brief the application of res judicata to Owens' case. Therefore, consistent with my dissent in *State v. Keating*, 12th Dist. Clermont No. CA2019-08-064, 2020-Ohio-2770, ¶ 55–56 (Piper, J., dissenting), I would reserve judgment at this time, opting to request supplemental briefing for a fair and full consideration as to whether or not res judicata applies.