[Cite as *State v. Johnson*, 2020-Ohio-2676.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2018-06-020 |
| | : | O P I N I O N |
| - vs - | | 4/27/2020 |
| | : | |
| DECARIO J. JOHNSON, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20170099


Stephen J. Pronai, Madison County Prosecuting Attorney, Rachel M. Price, Nicholas A. Adkins, 59 North Main Street, London, Ohio 43140, for appellee

Anzelmo Law, James A. Anzelmo, 446 Howland Drive, Gahanna, Ohio 43230, for appellant



**HENDRICKSON, P.J.**

{¶1} Appellant, Decario J. Johnson, appeals from his conviction and sentence in the Madison County Court of Common Pleas for vehicular assault.

{¶2} In February 2017, appellant was driving in the northbound lane of the two-lane state route 38 ("Rt. 38") just north of London, OH in Madison County. At the time, appellant driver's license was suspended. There were several vehicles ahead of him on the road that afternoon and that section of the road featured a slight hill and curve.

Appellant decided to pass the vehicles in front of him. After entering the oncoming lane of traffic and overtaking the first vehicle, appellant crested the hill and saw another vehicle (the "victim") immediately in front of him traveling in the southbound lane. Both drivers unsuccessfully attempted to evade each other by going off the roadway into the shoulder of the southbound lane when the two vehicles collided.[1] Unfortunately, the collision caused the victim to become trapped inside his vehicle and it took nearly an hour for responding emergency services to extricate him. The collision caused major injuries to the victim, including broken bones in his legs, hands, and ribs; internal organ damage; and significant blood loss that required emergency surgery to save his life. After several surgeries, one of victim's legs only had one functioning blood vessel so the victim made the decision to amputate his leg below the knee. Appellant received minor injuries from the crash.

{¶3} The Madison County Grand Jury indicted appellant on one count of vehicular assault, a third-degree felony in violation of R.C. 2903.08(A)(2)(b) and (C)(2).[2] The matter proceeded to a jury trial in May 2018. At trial, the prosecution called seven witnesses to testify: two responding Ohio State Highway Patrol troopers who participated in the traffic collision investigation; a motorist traveling behind appellant's vehicle who observed the collision; a motorist traveling in front of appellant and one of his passengers who observed the collision; the chief of the fire department who helped extricate the victim; and the victim. In addition, the prosecution had several exhibits, including photographs and the crash data reports, admitted into evidence. For the defense, appellant testified on his own behalf and had several photographs of the roadway admitted into evidence. At the conclusion of the trial, the jury found appellant guilty as charged.

---

1. Both vehicles only had one occupant.

2. Pursuant to R.C. 2903.08(C)(2) the prosecution charged appellant with a third-degree felony because appellant operated his motor vehicle while under a driver's license suspension.

{¶4} The trial court sentenced appellant to a 48-month mandatory term of imprisonment, ordered appellant to pay $24,000 in restitution to the victim, and notified appellant that he was subject to a mandatory three-year term of postrelease control.

{¶5} Appellant now appeals, raising four assignments of error for review. For ease of analysis, we will discuss assignments one and two together and assignments three and four together.

{¶6} Assignment of Error No. 1:

{¶7} JOHNSON'S CONVICTION FOR VEHICULAR ASSAULT IS BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION. (MAY 25, 2018 TR. 484) (JUNE 21, 2018 ENTRY).

{¶8} Assignment of Error No. 2:

{¶9} JOHNSON'S CONVICTION FOR VEHICULAR ASSAULT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION. (MAY 25, 2018 TR. 484) (JUNE 21, 2018 ENTRY).

{¶10} In his first and second assignments of error, appellant argues that the evidence was insufficient to convict him and that his conviction was against the manifest weight of the evidence. Specifically, appellant contends that there was no evidence that he acted with the essential culpable mental state. Alternatively, he argues, the evidence of his mental state was so unpersuasive, and of little weight, the jury clearly lost its way when it found him guilty of vehicular assault.

{¶11} A sufficiency of the evidence challenge requires the appellate court to

determine whether the conviction was supported as a matter of law. *State v. Green*, 12th Dist. Warren No. CA2017-11-161, 2018-Ohio-3991, ¶ 25. The test for sufficiency is whether the prosecution has met its burden of production at trial. *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34. An appellate court's standard of review for sufficiency of the evidence is whether any reasonable trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Cobb*, 12th Dist. Butler No. CA2007-06-153, 2008-Ohio-5210, ¶ 93, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶12} A manifest weight of the evidence challenge requires the appellate court to examine the greater amount of credible evidence, offered at trial, to support one side of the issue over the other. *State v. Peyton*, 12th Dist. Butler No. CA2015-06-112, 2017-Ohio-243, ¶ 42. This requires an appellate court to review the entire record, weigh the evidence and all reasonable inferences, consider credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Spencer*, 12th Dist. Warren No. CA2018-08-082, 2019-Ohio-2165, ¶ 21. The discretionary power to grant a new trial should be exercised only in the exceptional case where the evidence weighs heavily against the conviction. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). The determination that a conviction is supported by the manifest weight of the evidence will be dispositive of the sufficiency of the evidence challenge. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶13} Appellant was convicted of vehicular assault pursuant to R.C. 2903.08(A)(2)(b). As set forth in this statute:

(A)  No person, while operating or participating in the operation of a motor vehicle * * * shall cause serious physical harm to another person or another's unborn in any of the following ways:
(2) In one of the following ways:
(b) Recklessly.

Additionally, the prosecution had to prove that appellant operated his vehicle while his driver's license was suspended.  R.C. 2903.08(C)(2).  Appellant does not dispute that he operated a motor vehicle, that the victim suffered serious physical harm from the automobile collision, or that he operated the vehicle while under a driver's license suspension. Appellant only contests whether the evidence proved he acted with the culpable mental state of "recklessly."  As defined by R.C. 2901.22(C),

[a] person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature.  A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

A risk is defined as a "significant possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist."  R.C. 2901.01(A)(7).  To determine whether a driver recklessly operated a motor vehicle it is necessary to examine "both the driving in issue and *all* the circumstances under which it took place."  (Emphasis in original.)  *State v. Hartman*, 41 Ohio App.3d 142, 143 (12th Dist.1987), fn. 3.  "Foremost among these circumstances is the threat this manner of operation poses to others."  *Id.* Moreover, this court has held that when the roadway markings prohibit passing, for instance where the pavement is marked with two solid yellow lines, any passing maneuver is inherently reckless.  *See State v. Gayheart*, 12th Dist. Fayette No. CA97-01-001, 1997 Ohio App. LEXIS 4018, *5 (Sep. 8, 1997) (evidence of crossing the double-yellow line is an act which reflects a blatant disregard for the safety of others and is therefore a reckless act in

- 5 -

itself.). The act becomes even more reckless when an "illegal passing was attempted at or about a hill crest where the visibility of oncoming cars was close to nil." *State v. Kinney*, 12th Dist. Madison No. CA99-01-001, 1999 Ohio App. LEXIS 4154, *12 (Sep. 7, 1999).

{¶14} Here, three of the witnesses who testified were fellow motorists who personally observed the collision while traveling along Rt. 38. Each of these witnesses testified that appellant attempted his passing maneuver as the road approached a hill and curve and he was behind a number of vehicles.

{¶15} The driver of the vehicle immediately behind appellant testified that she observed appellant pull out of the northbound lane to attempt to pass the vehicles in front of him. At that point in the road, the hill and curve completely obstructed her view of oncoming traffic. She saw appellant overtake the car directly in front of him but continue travelling in the oncoming lane to attempt to pass the next vehicle. She further testified that appellant never tried to move back into the northbound lane after overtaking the first vehicle and it is when appellant was moving to pass the next-in-line vehicle that he collided with the victim's vehicle. Finally, the witness testified that appellant's passing maneuver was not started in an authorized passing zone. The witness acknowledged that she initially believed that appellant began in a passing zone but definitively changed her mind by observing the pavement markings in relation to the area of the collision while driving along the road several times since the collision.

{¶16} The other eyewitnesses were the driver and one of his passengers in the vehicle directly in front of appellant's vehicle. This driver testified that there were several vehicles in front of him, including a box truck. He realized appellant had moved into the oncoming lane of traffic when he noticed appellant's vehicle pulled alongside his own. After appellant's vehicle overtook his vehicle, the driver testified that appellant continued travelling in the oncoming lane of traffic. As the pass maneuver was happening, he

purposefully looked down at the roadway's pavement markings and saw that it was a no-passing zone for the northbound lane. The driver began to slow down as a safety precaution because he could not see oncoming traffic beyond the curve in the roadway. After the collision, he went to check on appellant and heard appellant tell his passenger that appellant was late to pick up his daughter.

{¶17} The driver's passenger testified to a similar description of events. She observed appellant's vehicle overtake the vehicle she was in and continue on in his attempt to overtake the car in front of them. She observed that the pavement marking was two solid yellow lines, which indicated no passing. Like the driver of the other vehicle, the passenger never saw appellant attempt to steer back into the northbound lane before he collided with the victim's vehicle. Following the collision, she went over to check on appellant. She spoke with appellant and he stated that he was on his way to pick up his daughter. On cross-examination, she remembered appellant told her that he was late for the pickup.

{¶18} A highway patrol trooper from the traffic crash reconstruction unit testified that he recovered data from both appellant's and the victim's vehicle airbag modules which captured travel information from the vehicles, such as speed and brake application, in the moments before airbag deployment. The airbag module for appellant's vehicle indicated that appellant's vehicle reached speeds of up to 74 mph in the seconds before he engaged his brakes and collided with the victim's vehicle. The trooper further testified that the margin of error for the speed data is ± 2 mph. For that portion of Rt. 38, the trooper testified that the posted speed limit was 55 mph. The other investigating trooper testified that at the area of the collision and extending for hundreds of feet to the south, there were two solid yellow lines on the roadway that signaled a no passing zone.

{¶19} Appellant admitted that the section of Rt. 38 where he was travelling had a blind curve and hill. He variably referred to that section of roadway as "that blind corner,"

the "blind crest and the hill," and the "blind curve and the hill." Furthermore, he admitted that he did not make a good decision when he tried to pass the car in front of him. While appellant testified that he did not see more than one vehicle in front of him and was in a passing zone before he committed to the passing maneuver, he testified that he saw a green car and a white van while engaging in his passing maneuver and was unable to pull back into the northbound lane.

{¶20} After review of the record, we find that appellant's conviction was not against the manifest weight of the evidence. There was substantial evidence that appellant acted with heedless indifference to the consequences of his actions by taking an unjustifiable risk when he drove that day. Each of the eyewitnesses testified that appellant attempted to pass more than one vehicle when the ability to see oncoming traffic was considerably obstructed by a hill and curve in the road. Two of the eyewitnesses testified that there was no attempt or indication that appellant tried to get back into the appropriate lane of travel after overtaking the car directly in front of him. Furthermore, each of the eyewitnesses and the law enforcement officers testified that the pavement markings in the area forbid passing for the northbound lane. It is not against the manifest weight of the evidence because the trier of fact believed the prosecution's witnesses. *State v. Erdmann*, 12th Dist. Clermont Nos. CA2018-06-043 and CA2018-06-044, 2019-Ohio-261, ¶ 32.

{¶21} Even, assuming arguendo, appellant initiated his passing maneuver when he was legally allowed to do so, there was evidence that appellant could not see oncoming traffic and did not move over after overtaking the vehicle in front of him. This evidence also demonstrates that appellant acted with heedless indifference to the consequences. Appellant admitted that he could not see the victim's vehicle approaching after he pulled into the oncoming lane of traffic. Moreover, appellant was travelling almost 20 mph over the posted speed limit which further increased the dangerousness. Therefore, by

appellant's own testimony the jury could reasonably infer that appellant simultaneously recognized and disregarded a significant risk by engaging in the passing maneuver. Consequently, the evidence proved that appellant's driving and the circumstances of the road posed a substantial threat to oncoming vehicles and, indeed, resulted in serious injury to the victim. The jury did not clearly lose its way in finding appellant guilty of vehicular assault.

{¶22} Accordingly, appellant's first and second assignments of error are overruled.

{¶23} Assignment of Error No. 3:

{¶24} THE TRIAL COURT PLAINLY ERRED BY ORDERING JOHNSON TO PAY RESTITUTION. (JUNE 6, 2018, TR. 41) (JUNE 21, 2018 ENTRY).

{¶25} Assignment of Error No. 4:

{¶26} THE TRIAL COURT ERRED BY ORDERING JOHNSON TO SERVE MANDATORY POST-RELEASE CONTROL. (JUNE 6, 2018, TR. 39-40) (JUNE 21, 2018 ENTRY).

{¶27} In his third and fourth assignments of error, appellant argues that the trial court erred when it sentenced appellant. Appellant contends that the imposition of restitution was contrary to law because the trial court did not consider his "present and future ability to pay" in light of the fact that the court found him indigent and appointed an attorney to represent him. Finally, appellant argues that the imposition of *mandatory* postrelease control was contrary to law.

{¶28} An appellate court reviews a felony sentence in accordance with the standard of review set forth in R.C. 2953.08(G)(2). *State v. Julious*, 12th Dist. Butler No. CA2015-12-224, 2016-Ohio-4822, ¶ 8. Pursuant to this statute, an appellate court "may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the

sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1; *accord State v. Blevings*, 12th Dist. Warren No. CA2017-12-175, 2018-Ohio-4382, ¶ 16. An appellate court does not review the sentence for an abuse of discretion. R.C. 2953.08(G)(2); *See also Marcum* at ¶ 10.

{¶29} Beginning with appellant's third assignment of error, this court has previously held that a restitution order is reviewed according to R.C. 2953.08(G)(2), because the term "sentence" encompasses a financial sanction such as restitution. *State v. Collins*, 12 Dist. Warren No. CA2014-11-135, 2015-Ohio-3710, ¶ 31 and fn 1. Nevertheless, this court will review appellant's order of restitution only for plain error because appellant did not object to the order at the sentencing hearing. *State v. Sesic,* 12th Dist. Madison No. CA2012-08-020, 2013-Ohio-2864, ¶ 6. It is plain error for a trial court to order restitution without considering ability to pay. *State v. Chaffin*, 12th Dist. Madison No. CA2016-08-026, 2017-Ohio-4041, ¶ 11. An appellate court will take notice of plain error in exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶30} A trial court may order an offender to pay restitution as part of a felony sentence. R.C. 2929.18. Before the trial court imposes restitution, however, the trial court must "consider" the offender's present and future ability to pay. R.C. 2929.19(B)(5). Contrary to appellant's argument,

> the determination that a defendant is indigent for purposes of appointed counsel is separate and distinct from a determination that the person is indigent for purposes of paying a mandatory fine or financial sanction.

*State v. Abrams*, 12th Dist. Clermont Nos. CA2017-03-018 and CA2017-03-019, 2017-Ohio-8536, ¶ 28. In ordering restitution, a trial court is not required to make any specific findings regarding the ability to pay, *State v. Liming*, 12th Dist. Clermont Nos. CA2018-05-

028 and CA2018-05-029, 2019-Ohio-82, ¶ 36, nor explicitly state in the judgment entry that it considered the offender's ability to pay. *State v. Geldrich*, 12th Dist. Warren No. CA2015-11-103, 2016-Ohio-3400, ¶ 12. A reviewing court will look at the totality of the record to determine if there is some evidence that the consideration requirement has been met. *Abrams* at ¶ 27. Where the record contains a presentence-investigative ("PSI") report that details the offender's personal and financial information, that report will establish compliance with the statute. *State v. Dehner*, 12th Dist. Clermont No. CA2012-12-090, 2013-Ohio-3576, ¶ 47.

{¶31} After our review of the record, we find that there is no error, much less plain error, because the trial court considered appellant's present and future ability to pay. Foremost, the trial court ordered and reviewed a PSI report. This PSI report contained information regarding appellant's employment history, age, and education level. Specifically, it demonstrated that appellant had been employed prior to the instant offense and appellant will still be relatively young when he is released from prison. There is nothing in the PSI report, or otherwise in the record, to indicate that appellant would have difficulty finding and maintaining future employment.

{¶32} Beyond the PSI report, though, appellant testified at trial that he was then currently employed. Moreover, at the sentencing hearing, appellant's trial counsel offered in mitigation the fact that appellant had been employed in various capacities since he was 16 years old. Appellant, in allocution, declared his intent to "make full restitution" to the victim. Given the PSI report and the various information offered by appellant and his attorney during the proceedings, we find there is some evidence in the record to demonstrate that the trial court considered appellant's present and future ability to pay restitution before imposing it as part of the sentence.

{¶33} Accordingly, appellant's third assignment of error is overruled.

{¶34} Turning to the fourth assignment of error, appellant argues that the trial court erred in ordering a mandatory three-year term of postrelease control because his offense was not an offense of violence as defined in R.C. 2901.01(A)(9). Appellant raised the issue at sentencing, but after an off-the-record bench conference, the trial court ordered mandatory postrelease control.

{¶35} Appellee concedes that postrelease control is not mandatory and cites *State v. Moore*, 4th Dist. Adams No. 18CA1070, 2019-Ohio-1467, in support. In *Moore*, the Fourth District Court of Appeals held that R.C. 2903.08 is not an offense of violence nor a sexual offense and therefore mandatory postrelease control is not required when the violation is a third-degree felony.[3] *Id.* at ¶ 15-16. We agree with the Fourth District's analysis. Relevant to this review, postrelease control is *mandatory* after a term of imprisonment for a third-degree felony offense when it is either a sexual offense or an "offense of violence."[4] R.C. 2967.28(B). On the other hand, pursuant to R.C. 2967.28(C), postrelease control is optional, at the discretion of the parole board, for a period of up to three years on any other, non-qualifying third-degree felony offense.

{¶36} Vehicular assault, pursuant R.C. 2903.08(A)(2)(b), is neither a sexual offense nor an offense of violence. This statute is not a sexual offense because none of the elements of R.C. 2903.08(A)(2)(b) involve sexual activity or other sexualized behavior.[5] Second, it is not an offense of violence. An "offense of violence" is defined in R.C. 2901.01(A)(9) as

(a) A violation of section 2903.01, 2903.02, 2903.03, 2903.04,

---

3. We note that *State v. Moore* dealt with a different division of the statute, that is, R.C. 2903.08(A)(1)(a) aggravated vehicular assault. Nevertheless, that difference is insignificant to the review.

4. Pursuant to R.C. 2967.28(B)(1) a felony sex offense is subject to five years of postrelease control, while pursuant to R.C. 2967.28(B)(3) a third-degree felony "offense of violence" is subject to three years.

5. We further note that sex offenses are codified in a different chapter, i.e. R.C. Chapter 2907, than vehicular assault.

2903.11, 2903.12, 2903.13, 2903.15, 2903.21, 2903.211, 2903.22, 2905.01, 2905.02, 2905.11, 2905.32, 2907.02, 2907.03, 2907.05, 2909.02, 2909.03, 2909.24, 2911.01, 2911.02, 2911.11, 2917.01, 2917.02, 2917.03, 2917.31, 2919.25, 2921.03, 2921.04, 2921.34, or 2923.161, of division (A)(1) of section 2903.34, of division (A)(1), (2), or (3) of section 2911.12, or of division (B)(1), (2), (3), or (4) of section 2919.22 of the Revised Code or felonious sexual penetration in violation of former section 2907.12 of the Revised Code;

(b) A violation of an existing or former municipal ordinance or law of this or any other state or the United States, substantially equivalent to any section, division, or offense listed in division (A)(9)(a) of this section;

(c) An offense, other than a traffic offense, under an existing or former municipal ordinance or law of this or any other state or the United States, committed purposely or knowingly, and involving physical harm to persons or a risk of serious physical harm to persons;

(d) A conspiracy or attempt to commit, or complicity in committing, any offense under division (A)(9)(a), (b), or (c) of this section.

R.C. 2903.08(A)(2)(b) is not one of the statutes enumerated in R.C. 2901.01(A)(9)(a), nor is it a law or ordinance that is substantially equivalent to one of the statutes listed in division (A)(9)(a) so R.C. 2901(A)(9)(b) does not apply. The mental state required to commit vehicular assault in R.C. 2903.08(A)(2)(b) is "recklessly," therefore, R.C. 2901.01(A)(9)(c)—which requires a mental state of purposely or knowingly—is also inapplicable. Finally, the foregoing analysis makes the provision in R.C. 2901.01(A)(9)(d) inapplicable. Therefore, we hold that a violation of R.C. 2903.08(A)(2)(b) does not constitute an offense of violence. Our determination that R.C. 2903.08(A)(2)(b) is a non-qualifying third-degree felony offense establishes that postrelease control is not mandatory. Consequently, imposing mandatory postrelease control was contrary to law.

{¶37} Having found that appellant's postrelease control is contrary to law, that portion of his sentence is void and subject to review and correction. *State v. Fischer*, 128

Ohio St.3d 92, 2010-Ohio-6238, ¶ 26-27.  The change in nature from a mandatory term of postrelease control to a discretionary term is necessarily a substantive change and requires the trial court provide in-person notification, therefore, R.C. 2929.191 applies and a resentencing hearing must be conducted.  *Compare Fischer*, 128 Ohio St. 3d 92, 2010-Ohio-6328 at ¶ 29 (defendant entitled to limited resentencing hearing when sentence is void) with *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, ¶ 30 (nunc pro tunc entry may suffice in correcting a postrelease control error in the judgment entry where the defendant was properly notified at the sentencing hearing of the *type* and duration of postrelease control imposed).  The resentencing hearing is limited only to correct the postrelease control portion of appellant's sentence.  *Fischer* at ¶ 29.

{¶38} Accordingly, appellant's fourth assignment of error is sustained.  Finding merit to appellant's fourth assignment of error, the postrelease control provision of his sentence is reversed and the cause remanded for the limited purpose of resentencing appellant to a *discretionary* period of up to three years of postrelease control.

{¶39} Judgment reversed, in part, and remanded to the trial court for further proceedings consistent with this opinion. In all other respects, the judgment of the trial court is affirmed.


PIPER and M. POWELL, JJ., concur.