[Cite as *State v. Sales*, 2022-Ohio-4326.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-05-056 |
| | : | O P I N I O N |
| - vs - | | 12/5/2022 |
| | : | |
| HALLAN IVERZON JERONIMO SALES, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2021-03-0312

Michael T. Gmoser, Butler County Prosecuting Attorney, and John C. Heinkel, Assistant Prosecuting Attorney, for appellee.

George A. Katchmer, for appellant.

**S. POWELL, P.J.**

{¶ 1} Appellant, Hallan Iverzon Jeronimo Sales, appeals from the decision of the Butler County Court of Common Pleas denying his presentence motion to withdraw his guilty plea to single counts of fourth-degree felony vehicular assault and first-degree misdemeanor operating a vehicle while under the influence of alcohol. For the reasons outlined below, we affirm the trial court's decision.

{¶ 2} On March 31, 2021, the Butler County Grand Jury returned an indictment charging Sales with third-degree felony aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a) and first-degree misdemeanor operating a vehicle while under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(a). A superseding indictment was thereafter returned that included an additional charge of first-degree misdemeanor OVI in violation of R.C. 4511.19(A)(1)(e).

{¶ 3} The charges arose after the then unlicensed and intoxicated Sales caused an automobile accident between himself and a parked police cruiser during the early morning hours of February 25, 2021, while traveling westbound on E. Cresentville Road in West Chester Township, Butler County, Ohio. The crash between Sales' vehicle and the parked police cruiser caused the victim seated in the police cruiser's backseat to be hospitalized for several weeks with a subdermal hematoma that required the victim to undergo emergency neurosurgery. Sales, a non-citizen who immigrated to the United States from his home country of Guatemala, and whose native language is Mam, was 18 years old at the time of the accident.[1]

{¶ 4} On April 14, 2021, Sales appeared at his arraignment hearing and a not guilty plea was entered on Sales' behalf. The matter then proceeded to discovery and Sales' trial was scheduled for November 15, 2021. Approximately seven months later, on November 3, 2021, Sales moved the trial court for a continuance of his trial date so that his then attorney, Attorney Louis E. Valencia, II, would have time to review certain medical records that the state had yet to receive from the victim.[2] The trial court granted Sales' motion to continue and rescheduled Sales' trial to take place on January 10, 2022.

---

1. Mam is a Mayan language spoken primarily in Guatemala.

2. There is no dispute that Attorney Valencia is bilingual and speaks fluently in both English and Spanish.

{¶ 5} On December 9, 2021, the trial court met with counsel for both parties in chambers to discuss Sales' upcoming trial. During this meeting, counsel spoke at length regarding a potential resolution of the case. The record indicates that a sizable portion of this discussion came from Sales' then attorney, Attorney Valencia, and was centered around Sales' immigration status and the potential impact on Sales' immigration status, if Sales were to enter into a plea agreement with the state. This meeting ultimately concluded without any resolution to the case.

{¶ 6} On January 5, 2022, Sales entered into a negotiated plea agreement with the state. After entering into this plea agreement, Sales appeared before the trial court with a Spanish interpreter and his attorney, Attorney Valencia. Once the interpreter was sworn in, Sales' attorney advised the trial court that Sales had agreed to plead guilty to a reduced charge of fourth-degree felony vehicular assault in violation of R.C. 2903.08(A)(2)(b), as well as the first-degree misdemeanor OVI set forth in the original indictment, in exchange for the state dismissing the additional first-degree misdemeanor OVI charged in the superseding indictment.[3] Sales' attorney also advised the trial court that Sales had agreed to pay restitution upwards of $450,000 to cover the victim's medical bills.[4] When asked by the trial court if this was his understanding of the plea agreement he had entered into with the state, Sales immediately responded to the trial court, in English, and stated, "Yes."

{¶ 7} Following the necessary Crim.R. 11(C) plea colloquy, the trial court accepted

---

3. Sales pled guilty to fourth-degree felony vehicular assault in violation of R.C. 2903.08(A)(2)(b). Pursuant to that statute, no person, while operating or participating in the operation of a motor vehicle, shall recklessly cause serious physical harm to another person or another's unborn. *See State v. McQuistan*, 9th Dist. Medina No. 17CA0007-M, 2018-Ohio-539, ¶ 18 (a violation of R.C. 2903.08[A][2][b] occurs "if an individual recklessly causes serious physical harm to another while driving a motor vehicle"). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

4. The record indicates the victim's medical bills had yet to be reviewed by the victim's insurer, if any. It was therefore Sales' attorney's understanding that the amount of restitution Sales would ultimately owe to the victim would be significantly less than the agreed upon $450,000.

Sales' guilty plea upon finding the plea was knowingly, intelligently, and voluntarily entered. This plea colloquy included the trial court confirming with Sales that Sales understood that by entering a guilty plea he would waive his right to a jury trial. This also included Sales advising the trial court that he understood fully what was taking place prior to him entering his guilty plea, and Sales admitting to the trial court that the state's recitation of facts were true.

{¶ 8} During the plea colloquy, Sales further noted for the trial court that nobody had forced, threatened, or coerced him in any way to plead guilty. This is in addition to Sales notifying the trial court that he was satisfied with the legal advice and representation that he had received from his then attorney, Attorney Valencia, and that there was nothing that his attorney could have done, or should have done, that he had not done prior to him entering his guilty plea. The record indicates that this included Sales reviewing the change of plea form with Attorney Valencia and having his attorney explain the change of plea for to him in Spanish prior to Sales signing his name to that form.

{¶ 9} On January 12, 2022, Sales filed notice of substitution of counsel informing the trial court that he had retained new counsel and would no longer be represented by Attorney Valencia. Five days later, on January 17, 2022, Sales' new counsel filed a motion to withdraw Sales' guilty plea. To support this motion, Sales attached two affidavits: one that Sales himself had signed and one that was signed by Sales' mother.[5] In his affidavit, Sales averred, among other things, the following:

> It was not until the judge told me that I would not have the rights to a jury and to call witnesses that I heard of these things and that I must pay $450,000.00 for the [victim]. I was confused and afraid and I looked to Mr. Valencia who told me to say "guilty" which I did because he said so[.]

---

5. We note that there were two copies of each affidavit attached to Sales' motion to withdraw his guilty plea, one that was written in Spanish and one that was written in English. Sales' and Sales' mother's signatures appear on both the Spanish and English versions of their respective affidavits.

{¶ 10} Sales also averred:

> I was afraid and confused at the time Mr. Valencia told me to plead because I had no choice, I did not understand that I would be giving up all my rights, I did so because Mr. Valencia said I had no choice five minutes before he wanted me to plead, I said guilty because Mr. Valencia told me to when we were in court[.]

{¶ 11} Somewhat similar to Sales' averments, Sales' mother averred in her affidavit that, "Mr. Valencia had told us that [the victim] was very seriously injured and couldn't walk and was eating through a straw," which was not true because she "saw this man walking around working and not injured and recorded this on my phone[.]" Sales' mother also claimed that she "attempted to show this [video] to Mr. Valencia more than one time but he was not interested[.]" Sales' mother further claimed that it was only after Sales entered his guilty plea that she "again spoke to Mr. Valencia about this video and he said, 'Oh, Ok, give it to my secretary[.]'" Sales' mother additionally averred within her affidavit, the following:

> Mr. Valencia called me on December 23, 2021 at 9:30 PM and told me that I had two options: if my son would plead guilty, he would want $1,000.00[.] He said he could sue the police officer because the officer did not do his job but he would want another $10,000.00 to sue the officer[.]

{¶ 12} On April 26, 2022, the trial court held a hearing on Sales' motion to withdraw his guilty plea. During this hearing, the trial court heard testimony from just one witness, Sales. Sales, who testified in English with the assistance of a Mam interpreter, claimed that he only met with his prior attorney, Attorney Valencia, one time. Sales testified that during this meeting his attorney never spoke with him about his plea or any defense strategy. Sales testified that his attorney also did not show him any discovery documents. Sales instead testified that his attorney merely told him, "If you want to pay me $10,000, then we'll go to trial. If you want to pay me $1,000, then you go into a plea." Sales testified that his attorney also told him to plead guilty and that, even though he was pleading guilty,

"witnesses will come to testify in court" and that, "if you plead guilty, you won't have no problem with immigration." Sales additionally testified that he did not want to plead guilty, but that he did so because he was "afraid" and "really [did not] know what was happening."

{¶ 13} On May 24, 2022, the trial court issued a lengthy, detailed decision setting forth its reasoning for denying Sales' motion. In so doing, the trial court noted that it had found certain portions of Sales' testimony "puzzling" given that Sales' testimony "contradicts" with other evidence in the record. This included, for instance, the claims Sales' mother made within her affidavit. The trial court also noted that it had found it "clear" that Sales had discussed his immigration status with his attorney, Attorney Valencia, prior to him entering into a negotiated plea agreement with the state. The trial court made this finding based, at least in part, on the fact that Sales' "immigration status and deportation consumed much of the discussion the court had in chambers with [Sales' attorney] and [the state]" during their meeting held on December 9, 2021.

{¶ 14} After setting forth these findings, the trial court then noted its conclusion regarding the allegations set forth within Sales' and Sales' mother's affidavits. In so doing, the trial court stated:

> The main thrust of what the court takes from [Sales'] affidavit and his mother's affidavit relate to the injuries suffered by the victim in this case and that they do not believe that he was injured as badly as they had been told. While [Sales'] mother may have a video of the victim walking around working and not injured, that doesn't mean that he was not seriously injured on the night [Sales] ran his vehicle into the back of the police cruiser the victim was in. Based on [the photographs of the victim in the hospital], the victim did indeed suffer serious physical harm, regardless of whether he has now made a recovery to the extent that he is able to walk and go back to work.

{¶ 15} The trial court then noted its findings in regard to Sales' claim that he needed a specific Mam interpreter in order to enter a guilty plea that was knowing and intelligent;

specifically, the court found that Sales' claim was not believable and thus lacked credibility. In so holding, the trial court stated:

> During the hearing [Sales] was asked about his conversations with his mother that were recorded while he was incarcerated at the Butler County Jail. While only one of these telephone calls was played, [Sales] admitted that during those conversations he was speaking Spanish. Upon further questioning by his counsel, [Sales] admitted that he and his mother were speaking Spanish, but he said that it was "everyday" Spanish. The court has no idea what constitutes "everyday" Spanish and nothing has been offered to the court as to what "everyday" Spanish is and how that differs from that used by the interpreter at the time [Sales] entered his guilty plea on January 5, 2022. In short, [Sales] has offered nothing to show that he needed the assistance of a specific Mam interpreter for him to have entered his plea knowingly, intelligently, and voluntarily.

{¶ 16} In reaching this decision, the trial court also noted:

> Prior to issuing this decision, the court took the opportunity to go back and listen to the recording of the hearing on the date [Sales] entered his guilty plea. The court asked [Sales] if he understood English and he said no. He was then asked if with the assistance of the [Spanish] interpreter and his counsel, he was able to understand fully what was going on and he said yes, without any hesitation. The entirety of the plea colloquy was translated from English into Spanish by the interpreter and there was no pause in [Sales'] responses to the court's questions – he said yes immediately every time he was asked if he understood something.

{¶ 17} After setting forth these findings, the trial court then noted its disagreement with Sales' assertion that a conviction of fourth-degree felony vehicular assault in violation of R.C. 2903.08(A)(2)(b) required his deportation from the United States back to his home country of Guatemala under federal law. In so doing, the trial court stated:

> [Sales] argues that the offense to which [he] pled guilty, for immigration purposes, is an aggravated felony under 8 USC § 1101(a)(43)(F) [and] a crime of violence (as defined in section 16 of title 18…) for which the term of imprisonment [is] at least one year. 18 USC § 16 defines a crime of violence as (a) an offense that has the element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony that, by its

- 7 -

> nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
>
> The Court does not agree with [Sales'] assessment that the charge to which [he] pled guilty is a crime of violence. [Sales] pled guilty to Vehicular Assault under R.C. 2903.08(A)(2)(b) – No person while operating or participating in the operation of a motor vehicle, … shall ***recklessly*** cause serious physical harm to another person (emphasis added). By doing so, [Sales] admitted to causing ***serious physical harm***, not physical force. In the court's opinion, physical harm and physical force are two completely different things. In addition, [Sales'] action[s] were done recklessly.

(Emphasis sic.)

{¶ 18} The trial court then concluded its decision by stating, in pertinent part, the following:

> In reviewing the factors the court is required to review, it is the court's opinion that the defendant was represented by highly competent counsel, that he was afforded a complete Crim.R. 11 hearing before entering his plea, that this court conducted a full and impartial hearing on the motion to withdraw the plea, that this court has given full and fair consideration to the motion, that the motion to withdraw plea was made within a reasonable time, that the motion set out specific reasons for the withdrawal (which were supplemented at the hearing held), that the defendant understood the nature of the charges and the possible penalties, that the defendant does not have a defense to the charges for which he was indicted and that he would be found guilty of much more serious charges if this matter had gone to trial. The court does not find that the state would be prejudiced by the withdrawal.

The trial court also concluded by noting its finding Sales was "only moving to withdraw his plea due to a change of heart" and not because the assistance he received from his original attorney, Attorney Valencia, "was deficient to the point that any plea was not entered knowingly, intelligently, and voluntarily."

{¶ 19} On May 25, 2022, the trial court held a sentencing hearing and sentenced Sales to a five-year community control term for the charge of vehicular assault and to 180-

- 8 -

days in jail for the charge of operating a vehicle while under the influence of alcohol, with 177 of those days suspended. The trial court also ordered Sales to pay a $375 fine and restitution to the victim for medical bills in the amount of $452,356.68. When fashioning its sentence, the trial court noted that although "Mr. Sales and his family believe [the victim] has made a full recovery, I am sure [he] continues to suffer the residual effects of the injuries he suffered that night." The trial court made this determination after hearing the victim's impact statement, which included the victim personally appearing before the trial court and stating on the record, "The only thing I'm asking for is justice because, in reality, I'm not okay. Every night I'm affected by a pain in my head, and you know, my personality and myself, I don't feel fine."

{¶ 20} On May 26, 2022, Sales filed a notice of appeal. Oral argument was held before this court on November 7, 2022. This case now properly before this court for decision, Sales has raised two assignments of error for review.

{¶ 21} Assignment of Error No. 1:

{¶ 22} A PRE-SENTENCE MOTION TO WITHDRAW A GUILTY PLEA SHOULD BE FREELY AND LIBERALLY GRANTED.

{¶ 23} In his first assignment of error, Sales argues the trial court erred by denying his presentence motion to withdraw his guilty plea because such motions are to be freely and liberally granted. We find no merit to Sales' claim.

{¶ 24} Pursuant to Crim.R. 32.1, a defendant may file a presentence motion to withdraw a guilty plea. *State v. Schwartz*, 12th Dist. Clermont Nos. CA2019-04-029, CA29 thru CA2019-04-031, 2019-Ohio-4912, ¶ 12. A defendant's presentence motion to withdraw a guilty plea "should be freely and liberally granted." *State v. Gabbard*, 12th Dist. Clermont No. CA2006-03-025, 2007-Ohio-461, ¶ 7, citing *State v. Xie*, 62 Ohio St.3d 521, 527 (1992). However, although freely and liberally granted, that does not mean a defendant possess an

absolute right to withdraw a guilty plea prior to sentencing. *State v. Manis*, 12th Dist. Butler No. CA2011-03-059, 2012-Ohio-3753, ¶ 24. "Rather, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *State v. Newton*, 12th Dist. Preble No. CA2014-10-011, 2015-Ohio-2319, ¶ 10, citing *State v. Witherspoon*, 12th Dist. Butler No. CA2010-01-025, 2010-Ohio-4569, ¶ 8. "In determining whether to grant a presentence motion to withdraw a guilty plea, the trial court should consider the circumstances surrounding the defendant's plea." *State v. Harris*, 12th Dist. Butler No. CA2018-04-076, 2019-Ohio-1700, ¶ 11, citing *State v. Metcalf*, 12th Dist. Butler No. CA2002-12-299, 2003-Ohio-6782, ¶ 11.

{¶ 25} There are several factors that should be considered when evaluating the circumstances surrounding a defendant's plea. *State v. Owens*, 12th Dist. Preble No. CA2021-07-007, 2022-Ohio-160, ¶ 30. Those factors include, but are not limited to (1) whether the defendant was represented by highly competent counsel; (2) whether the defendant was afforded a complete Crim.R. 11 hearing before entering the plea; (3) whether the trial court conducted a full and impartial hearing on the defendant's motion to withdraw the plea; (4) whether the trial court gave full and fair consideration to the motion; (5) whether the motion was made within a reasonable time; (6) whether the motion set out specific reasons for the withdrawal; (7) whether the defendant understood the nature of the charges and the possible penalties; (8) whether the defendant was possibly not guilty of the charges or had a complete defense to the charges; and (9) whether the state would have been prejudiced by the withdrawal. *Id.*, citing *State v. Snider*, 12th Dist. Clermont No. CA2012-10-075, 2013-Ohio-4641, ¶ 9.

{¶ 26} "No one factor is conclusive in the determination of whether a plea should be allowed to be withdrawn." *State v. Rivera*, 12th Dist. Butler No. CA2013-05-072, 2014-Ohio-3378, ¶ 17, citing *State v. Fish*, 104 Ohio App.3d 236, 240 (1st Dist.1995). Rather,

- 10 -

"[t]he decision to grant or deny a presentence motion to withdraw a guilty plea rests within the sound discretion of the trial court." *State v. Medina*, 12th Dist. Butler No. CA2021-08-100, 2022-Ohio-1799, ¶ 13. This court will not reverse a trial court's decision denying such a motion absent an abuse of that discretion. *State v. Taylor*, 12th Dist. Butler No. CA2013-10-186, 2014-Ohio-3080, ¶ 7. "An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable." *State v. Robinson*, 12th Dist. Butler No. CA2013-05-085, 2013-Ohio-5672, ¶ 14; *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130. "A decision is unreasonable where a sound reasoning process does not support it." *State v. Miller*, 12th Dist. Butler No. CA2016-01-007, 2016-Ohio-7360, ¶ 7, citing *AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161 (1990).

{¶ 27} Sales initially argues the trial court erred by denying his presentence motion to withdraw his guilty plea because he presented evidence that the discussion he had with his then attorney, Attorney Valencia, prior to entering his guilty plea left him "confused" and expecting "that he would still be able to go before a jury and call witnesses." Sales also argues the trial court erred by denying his motion to withdraw his guilty plea because, after the trial court engaged him in the necessary Crim.R. 11(C) plea colloquy, the evidence indicates "he looked to his attorney in confusion who signaled him to say guilty," something which he only did out of "fear." Sales further argues the trial court erred by denying his motion to withdraw because he provided evidence that he "did not understand what was occurring" at the plea hearing given his inability to understand "the more complicated legal language" being spoken to him in English and in Spanish rather than in his native language of Mam. Therefore, according to Sales, although it is "rare" that a trial court "flubs" a Crim.R. 11(C) plea colloquy, it is "not unusual" for a defendant like him "to follow the cues of his attorney without fully understanding what he is doing and giving up. That is the case

herein."

{¶ 28} While Sales presents his argument in several different iterations based on his interpretation of the record, the underlying theme remains the same: that is, a challenge to the trial court's decision finding Sales' testimony and averments alleging a language barrier prevented him from fully understanding the proceedings taking place at the change of plea hearing. Given this challenge, Sales is, in essence, requesting this court override the trial court's credibility determination and instead issue our own decision finding Sales' claims that he was confused, afraid, and did not fully understand the proceedings were credible. It is well-established, however, that "[o]ur role as a reviewing court on appeal does not permit us to substitute our judgment for that of the trial court in assessing the weight and credibility of matters in the record." *State v. Milhoan*, 10th Dist. Franklin No. 13AP-74, 2014-Ohio-310, ¶ 33. That is to say, "[a] reviewing court does not determine weight and credibility." *State v. Pittman*, 2d Dist. Montgomery No. 4509, 1974 Ohio App. LEXIS 3520, *5 (Nov. 19, 1974).

{¶ 29} It is equally well-established that it is the trial court, and not this court on appeal, that "assesses a defendant's credibility in considering the defendant's asserted reasons for wanting to withdraw his plea." *State v. Purnell*, 10th Dist. Franklin No. 17AP-298, 2018-Ohio-1036, ¶ 28; *State v. Vassalle*, 3d Dist. Seneca No. 13-14-03, 2014-Ohio-4426, ¶ 13 ("Because the trial court is in the best position to resolve the issues of credibility and the weight of the defendant's assertions, we will not substitute our judgment for that of the trial court."). We will not second guess the trial court in this regard. This makes sense when considering it is the trial court that has the opportunity to observe, engage, and interact with the defendant. *See, e.g., State v. Cook*, 10th Dist. Franklin No. 20AP-519, 2021-Ohio-2416, ¶ 22 ("As the trial court had the opportunity to observe and interact with Cook before assessing whether he truly was confused about the nature of his plea, we will

not second-guess the trial court in this regard."). Sales' first argument lacks merit.

{¶ 30} Sales next argues the trial court erred by denying his motion to withdraw because his attorney provided him with "patently false," "erroneous advice" that there would be "no problem" and "everything would be fine" with his immigration status if he accepted the state's plea offer and pled guilty to vehicular assault in violation of R.C. 2903.08(A)(2)(b). Although couched in different terms, Sales argument is essentially a challenge to the trial court's decision finding his conviction for vehicular assault in violation of R.C. 2903.08(A)(2)(b) was not a crime that could lead to his deportation from the United States and back to his home country of Guatemala. However, after thoroughly researching the issue, we agree with the trial court's finding that a crime that requires the mental state of just recklessness is not the type of crime that could result in a noncitizen's deportation from the United States.[6] The trial court, therefore, did not err by finding Sales' conviction for vehicular assault in violation of R.C. 2903.08(A)(2)(b) was not a crime that could lead to deportation from the United States back to his home country of Guatemala.[7] Sales' second argument also lacks merit.

{¶ 31} In reaching this decision, we note that the trial court properly advised Sales,

---

6. Pursuant to 8 U.S.C. 1227(a)(2)(A)(iii), "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." The term "aggravated felony" means "a crime of violence * * * for which the term of imprisonment [is] at least one year." 8 U.S.C. 1101(a)(43)(F). The phrase "crime of violence" means either "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or "any other offense that is a felony that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. 16(a) and 16(b). Following the recent release of the United States Supreme Court's decision in *Borden v. United States*, __ U.S. __, 141 S.Ct. 1817 (2021), the consensus is that if an offense can be committed recklessly then such offense does not qualify as a crime of violence. *See United States v. Quinnones*, 16 F.4th 414, 420 (3rd Cir.2021) ("The Supreme Court has held that if an offense can be committed with recklessness * * * it is not a crime of violence."); *United States v. Rice*, 36 F.4th 578, 580 (4th Cir.2022) ("A predicate offense must require proof of a mens rea more culpable than recklessness * * * to qualify as a crime of violence."); *United States v. Lopez-Castillo*, 24 F.4th 1216, 1219. fn. 2 (8th Cir.2022) ("After *Borden v. United States*, a crime of violence * * * requires a mens rea greater than recklessness—e.g., knowledge or intent."); *See also United State v. Portela*, 469 F.3d 496, 499 (6th Cir.2006) (appellant's conviction for "reckless vehicular assault" under Tennessee law did not constitute a crime of violence).

7. The mental state required to commit vehicular assault in violation of R.C. 2903.08(A)(2)(b) is "recklessly." *State v. Johnson*, 12th Dist. Madison No. CA2018-06-020, 2020-Ohio-2676, ¶ 36.

as a non-citizen, in accordance with its statutory duty set forth in R.C. 2943.031(A). *See State v. Perry*, 5th Dist. Muskingum No. CT2018-0045, 2019-Ohio-2699, ¶ 24 ("Revised Code R.C. 2943.031(A) describes the duty of the trial court to provide the warning therein as a mandatory obligation by the use of the word 'shall' most often used to designate a clear requirement."). Specifically, as the trial court advised Sales:

> And you understand by entering the plea of guilty to this charge that if you are not a citizen of the United States, conviction of this offenses or offenses to which you are pleading guilty may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States?

To this, Sales responded in English and stated, "Yes." The record therefore plainly establishes that the trial court complied with the statutory requirements set forth in R.C. 2943.031(A). Any suggestion that Sales makes otherwise is incorrect.

{¶ 32} For these reasons, and finding no merit to any of the arguments raised by Sales herein in support of his first assignment of error, Sales' first assignment of error lacks merit and is overruled. In so holding, we note the trial court found only three of the nine factors a trial court should consider when determining whether to grant a presentence motion to withdraw a guilty plea weigh in Sales' favor, whereas the other six factors did not. This includes the trial court's finding both that Sales did not have a defense to the charges set forth within the original and supplemental indictments, and Sales would have been found guilty of much more serious charges if this matter had ultimately gone to trial. Given the thorough explanation of its findings within its decision, and when considering the trial court's findings are supported by the record, we find no error with the trial court's decision. *See Owens*, 2022-Ohio-160 at ¶ 34 (finding the weight the trial court gave to those nine factors was not error where the trial court gave a thorough explanation of its findings, all of which were supported by the record).

{¶ 33} We also find no error with the trial court's decision finding Sales was "only moving to withdraw his plea due to a change of heart * * *." This is significant because, as this court has repeatedly recognized, "[a] mere change of heart regarding a decision to enter a plea, without some additional justification, is not a sufficient basis for the withdrawal of a guilty plea." *State v. Medina*, 12th Dist. Butler No. CA2021-08-100, 2022-Ohio-1799, ¶ 14, citing *State v. Ward*, 12th Dist. Clermont No. CA2008-09-083, 2009-Ohio-1169, ¶ 7; *see also State v. Harris*, 12th Dist. Butler No. CA2018-04-076, 2019-Ohio-1700, ¶ 15; *State v. Wofford*, 12th Dist. Butler No. CA2014-10-210, 2015-Ohio-3708, ¶ 11; and *Metcalf*, 2003-Ohio-6782 at ¶ 19. Therefore, when considering all of the foregoing, the trial court did not abuse its discretion in denying Sales' presentence motion to withdraw his guilty plea. This is because, as the record indicates, there exists a lack of any reasonable or legitimate basis for the withdrawal of Sales' plea. *See State v. Harris*, 12th Dist. Butler No. CA2018-04-076, 2019-Ohio-1700, ¶ 12-16. To the extent Sales argues otherwise, Sales is mistaken and any such argument lacks merit. Sales' first assignment of error is therefore overruled.

{¶ 34} Assignment of Error No. 2:

{¶ 35} A PLEA THAT IS INVOLUNTARY [AND] UNKNOWING DUE TO THE INEFFECTIVENESS OF COUNSEL MUST BE VACATED.

{¶ 36} In his second assignment of error, Sales argues his guilty plea was neither voluntarily nor knowingly entered because his original attorney, Attorney Valencia, provided him with ineffective assistance of counsel. We disagree.

{¶ 37} A criminal defendant has the right, under both the United States and Ohio Constitutions, to the effective assistance of counsel. *State v. Villani*, 12th Dist. Butler No. CA2018-04-080, 2019-Ohio-1831, ¶ 9. "A plea of guilty waives the right to claim that one was prejudiced by ineffective assistance of counsel, except to the extent that such ineffective assistance made the plea less than knowing, intelligent, and voluntary." *State v.*

*McMahon*, 12th Dist. Fayette No. CA2009-06-008, 2010-Ohio-2055, ¶ 33. "To prevail on an ineffective assistance of counsel claim in the context of a guilty plea, the defendant must show that (1) his [or her] counsel's performance was deficient and (2) there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty." *State v. Arledge*, 12th Dist. Clinton No. CA2018-12-024, 2019-Ohio-3147, ¶ 8, citing *State v. Bird*, 81 Ohio St.3d 582, 585 (1998). Deficient performance is defined as performance that fell below an objective standard of reasonableness. *State v. Jackson*, 149 Ohio St.3d 55, 2016-Ohio-5488, ¶ 97. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Morici*, 3d Dist. Allen No. 1-21-12, 2021-Ohio-3406, ¶ 30. A defendant's failure to make an adequate showing on either prong is fatal to the defendant's ineffective assistance of counsel claim. *State v. Zielinski*, 12th Dist. Warren No. CA2010-12-121, 2011-Ohio-6535, ¶ 50.

{¶ 38} Sales argues he received ineffective assistance of counsel because his attorney, Attorney Valencia, "never" discussed trial strategy with him or "showed him his discovery." Sales argues he also received ineffective assistance because his attorney stated that the victim "was very seriously injured and couldn't walk and was eating through a straw" even though his mother had taken a video recording of the victim "walking and working and not injured." Sales argues his attorney's ineffective assistance was then further exacerbated by his attorney appearing "uninterested" in the video recording his mother had purportedly taken of the victim and by his attorney telling his mother to leave the video recording "with his secretary" after he entered his guilty plea. Sales additionally argues he received ineffective assistance because he was "simply told by counsel that he must plead guilty," which he would not have done if he had known that pleading guilty even to a reduced charge of fourth-degree felony vehicular assault in violation of R.C. 2903.08(A)(2)(b) subjected him to "mandatory detention without bond and immediate removal" from the

United States and back to his home country of Guatemala. Therefore, according to Sales, it is clear that he "did not comprehend the proceedings" at the change of plea hearing or, at the very least, did not understand the impact of accepting the terms of the state's plea deal and entering a guilty plea, all of which demonstrates "a history of ineffective representation in this matter."

{¶ 39} Sales' ineffective assistance of counsel claims are based on the allegations he made at the hearing on his motion to withdraw and/or as part of the averments that were made within his and his mother's affidavits. The trial court, however, clearly found both Sales' and Sales' mother's allegations levied against Sales' attorney lacked credibility, were unsupported by the record, and/or were incorrect as a matter of law. This includes Sales' claim that he received ineffective assistance when his attorney advised him that a conviction for fourth-degree felony vehicular assault in violation of R.C. 2903.08(A)(2)(b) was not the type of crime that would result in his deportation from the United States. This also includes Sales' claim that he received ineffective assistance when his attorney told him the accident seriously injured the victim when his mother had a video recording of the victim seemingly uninjured, a claim the trial court soundly rebuffed by correctly noting that "doesn't mean [the victim] was not seriously injured on the night [Sales] ran his vehicle into the back of the police cruiser the victim was in. Based on [the photographs of the victim in the hospital], the victim did indeed suffer serious physical harm, regardless of whether he has now made a recovery to the extent that he is able to walk and go back to work."

{¶ 40} Given our review of the record, and as discussed more fully above, we find no error in the trial court's decision finding Sales' and Sales' mother's claims lacked credibility, were unsupported by the record, and/or were incorrect as a matter of law. Sales, therefore, has failed to demonstrate his original attorney's performance was deficient. Alternatively, even if we were to find Attorney Valencia's performance was deficient, which

we do not, Sales also failed to demonstrate that there was a reasonable probability that, but for counsel's errors, he would not have pled guilty. Just as the trial court found, this is because Sales did not have a defense to the charges set forth within the original and supplemental indictments, and Sales would have been found guilty of much more serious charges if this matter had ultimately gone to trial. For example, rather than fourth-degree felony vehicular assault in violation of R.C. 2903.08(A)(2)(b) for which Sales was sentenced to a two-year community control term, Sales would have instead been found guilty of third-degree felony aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a), an offense that carries with it a mandatory, definite prison term of 12, 18, 24, 30, 36, 42, 48, 54, or 60 months. *See* R.C. 2903.08(D)(1) and 2929.14(A)(3)(a). Therefore, when considering all of the foregoing, Sales also failed to demonstrate that there was a reasonable probability that, but for counsel's errors, he would not have pled guilty. Sales' claims otherwise lack merit.

{¶ 41} Accordingly, finding no merit to any of the arguments raised by Sales' herein in support of his second assignment of error, Sales' second assignment of error also lacks merit and is overruled.

{¶ 42} Judgment affirmed.

HENDRICKSON and BYRNE, JJ., concur.